## MURPHY v. SINEN.

1. AUTOMOBILES—LEGAL DURESS—FLIGHT—NEGLIGENCE—QUESTION FOR JURY.

   After passing obvious places of safety while in flight from unwelcome attentions of a motorist, defendant motorist, a woman driving defendant employer's car, *held*, not excused, as a matter of law as being under legal duress, from violating traffic laws and imperiling innocent drivers in course of three-mile race at excessive speed through busy traffic on main thoroughfare of two municipalities, hence defendants were not entitled to a directed verdict as her negligence, under the circumstances, was question for jury in action by truck owner injured when hit by car driven by her as she attempted to pass.

2. SAME—SPEED—PROXIMATE CAUSE.

   Whether defendants' car was struck by pursuing automobile before or after colliding with plaintiff's truck, jury *held*, justified in holding defendant driver's speed a contributing cause of collision with plaintiff's truck.

3. NEGLIGENCE—JOINT TORTFEASORS.

   One whose negligence continues to the time of an accident and without which the accident could not have occurred cannot claim immunity because the negligence of another is also present.

4. DAMAGES—FINANCIAL LOSS—PERSONAL INJURIES.

   Verdict and judgment of $3,000 to plaintiff who suffered financial loss of $750, inclusive of $550 as wages, and who suffered cuts alongside the nose, on the knee, and severance of a tendon requiring subsequent operation *held*, not excessive.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted June 10, 1937. (Docket No. 61, Calendar No. 39,530.) Decided September 1, 1937.

Case by Edward Murphy against Evelyn Sinen and Charles Graham for personal injuries sustained in an automobile collision. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Smedley & Stribley,* for plaintiff.

*Frederick J. Ward,* for defendant Graham.

*Robert A. Carr,* for defendant Sinen.

FEAD, C. J.   About five o'clock on October 30, 1935, plaintiff was driving a Ford truck northerly on Peck street in Muskegon.   The truck was struck on the left rear corner by a car owned by defendant Graham and driven by defendant Evelyn Sinen with his consent.   The truck was propelled over the curb, plaintiff was thrown out and injured.   He had a verdict of a jury and judgment for $3,000.

Miss Sinen was housekeeper for defendant Graham but did not live in his home.   On the morning of October 30th she drove with him to his work at a foundry in Muskegon Heights and it was understood she could use the car during the day and would call for him in the afternoon.

Defendants' principal claim is that Miss Sinen was not guilty of negligence because, as she was driving carefully on the street and was about to pass the truck, her car was struck by one driven by Russell Halvorsen and projected against the truck.

Halvorsen was a sort of suitor of Miss Sinen's. They had been acquainted about three months.   Halvorsen was sometimes ungentle in his wooing.   About three weeks before the collision he became vexed at Miss Sinen (for reason undisclosed in the record) and manifested his displeasure by striking her in the face. blacking her eye and knocking out some of her

teeth.    Thereafter they were together frequently.
He was a jealous man.

Halvorsen and Miss Sinen met about noon of October 30th.    She promised to go on a trip with him, but
with the mental reservation that she would not go.
She attributed his later conduct to the belief that he
sensed her deceit.    She promised to meet him in the
afternoon.

In the afternoon she telephoned him to the effect
that Mr. Graham had come home and she could not
leave her duties as housekeeper.    Mr. Halvorsen informed her that he was going to Detroit and, unless
she went with him, he would kill her and would kill
Graham also.    He appeared to be perturbed about
something.

Later in the afternoon she went to the foundry to
take Graham home.    There sat Halvorsen in his car,
parked at the entrance.    They exchanged no greetings.    But, as Miss Sinen was about to stop her car,
she felt a bump and then a second bump, and, looking
into her rear view mirror, she saw that Halvorsen
was bumping his car against hers.    She said she became frightened.    She left Graham at the curb and
drove away at a rapid rate of speed to escape Halvorsen.    She wanted to find a police officer to protect
her from him.    Her destination was police headquarters.    She drove at the rate of about 50 miles
per hour—a distance of approximately three miles—
through the main business street of Muskegon
Heights and down a principal street of Muskegon,
with horn blowing and, according to one witness,
with screams for help.    She claims that she slackened
her speed at different times but each time Halvorsen
bumped her car and drove her on.    In her flight she
ran through two red lights and over a railroad crossing with the danger signal flashing.    She passed the

city hall, fire department and police station in Mus-·
kegon Heights, many stores, a policeman on a motor
cycle, who chased her, a policeman in a scout car,
who also joined the procession, and 17 gasoline sta-
tions, in any of which plaintiff feels she could have
obtained protection against Halvorsen's amorous ad-
vances. She wove in and out of the traffic, with Hal-
vorsen close behind her and occasionally bumping
her car until she overtook plaintiff's truck driving
at a speed of 18 to 20 miles per hour. Apparently she
attempted to pass the truck. Plaintiff and a police-
man said she did not have room to pass. She said
she did. When she struck the truck it hit a car ahead,
knocking it a distance of some 79 feet, and two or
three other cars were struck in the ensuing disrup-
tion of orderly traffic.

Directly after the collision Miss Sinen's car ran
approximately half a block, with Halvorsen's right
bumper locked to her rear bumper. · When they
stopped, Halvorsen grabbed her by the arm but she
jerked away from him and went back to the place of
the collision. He was ugly but attempted no vio-
lence. She had no difficulty in getting away from
him.

There was positive testimony that Halvorsen's car
struck Miss Sinen's before hers struck the truck.
A policeman testified that Halvorsen's car struck
Miss Sinen's after hers struck the truck but, on
cross-examination, was not positive of the fact. Be-
cause of the state of such testimony and upon the
theory that Miss Sinen was fleeing to save her life,
defendants claim she was not negligent, and they
were entitled to direction of verdict.

The court submitted the case to the jury upon the
rule that defendants would be liable if the proximate
cause of the collision were the sole negligence of Miss

Sinen or the concurrent negligence of herself and Halvorsen. No complaint is made of the charge.

Clearly, Miss Sinen was guilty of negligence in exceeding the speed limit established by law, ordinance and the condition of the traffic and in striking the truck in the rear, unless her flight from Halvorsen justified her haste. Defendants cite no authorities to support their contention that it did.

We need not inquire into the character and imminence of danger and the reality and degree of fear which will excuse one from violating traffic laws and imperiling innocent drivers on the highway. Whatever may be the rule, the danger and fear would not continue to excuse after one had passed obvious places of safety. The facts do not indicate such undisputed immediate and serious danger to Miss Sinen nor such lack of safe places to stop as would justify the court, as a matter of law, in approving as careful driving, or as conduct under legal duress, her three-mile race through traffic. Defendants were not entitled to a directed verdict.

Nor do we think the verdict was against the great weight of the evidence. Regardless of the specific point of whether Halvorsen's car struck Miss Sinen's an instant before or after the collision with plaintiff's truck, it is apparent that the jury would be justified in holding that her speed was an actual contributing cause to the collision. One whose negligence continues to the time of an accident, and without which the accident could not have occurred, can hardly claim immunity because the negligence of another is also present.

Defendants contend the verdict was excessive. The computed financial loss of plaintiff was about $750, of which $550 were for loss of wages. He had a cut

alongside the nose which required five stitches. He was cut on the knee and a tendon severed. A subsequent operation was necessary to repair the tendon. The size of the verdict does not indicate that the jury was influenced by unfairness, prejudice or disregard of the nature of the injuries and we cannot hold the damages improper.

Defendants suggest other points in their brief but they are not set up in the statement of questions involved and they are of such a minor nature as not to constitute reversible error or require discussion.

Affirmed, with costs.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.